# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

LINDSAY JOHNSON,

        Plaintiff,

    v.                                        Case No.  13-C-1191

LVNV FUNDING,

        Defendant.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART JOHNSON'S MOTION FOR SUMMARY JUDGMENT (DOC. 28) AND DENYING LVNV FUNDING'S MOTION FOR SUMMARY JUDGMENT (DOC. 23)

In this consumer-rights action, Lindsay Johnson claims that LVNV Funding violated certain provisions of the Wisconsin Consumer Act ("WCA") and the federal Fair Debt Collection Practices Act ("FDCPA"). The parties have filed cross-motions for summary judgment. LVNV Funding seeks dismissal of all counts, while Lindsay Johnson seeks summary judgment as to liability, with determination of damages to follow.

Summary judgment is proper if the depositions, documents or electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating it is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate facts to support or defend each element of its cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the

light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive.  *Id.* at 247-48.  "Material" means that the factual dispute must be outcome-determinative under governing law.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).  Failure to support any essential element of a claim renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.  To establish that a question of fact is "genuine," the nonmoving party must present specific and sufficient evidence that, if believed by a jury, would support a verdict in its favor.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.

When both parties have moved for summary judgment, each is required to show that no genuine issues of material fact exist, taking the facts in the light most favorable to the party opposing each motion.  If genuine issues of material fact exist, neither party is entitled to summary judgment.  *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

## UNDISPUTED FACTS

On or about November 29, 2004, Lindsay Johnson, formerly known as Lindsay Reinbold, opened a Washington Mutual Bank, NA ("WaMu") credit card account ending in numbers 1798 (the "Account").  (Doc. 25, ¶ 1.[1])  WaMu sent monthly account statements (the "Account Statements") to Johnson at her home address of 546 Black Earth Court, Wales, WI 53183, reflecting the activity on the Account.  (*Id.* ¶ 2.)  Between

---

[1] Johnson did not respond to LVNV's statments of undisputed material fact.  Therefore, the court treats them as undisputed.  Civil L.R. 56(b)(4).

2

February 1, 2007, and April 23, 2008, Johnson made three payments on the Account: $20 on February 2, 2007; $600 on May 28, 2007; and $100 on January 8, 2008. (*Id.* ¶ 3.) She made no further payments on the Account in the three and one-half month period between January 8, 2008, and April 23, 2008. (*Id.* ¶ 4.)

Johnson admits that while she attended college, she had "a couple of credit cards," though she does not recall who issued them or what the balances were. (Doc. 28 Lindsay Johnson Decl. ¶ 4.) She admits that after graduation in 2007 she had a period of unemployment and fell behind on some of her debts. (*Id.* ¶ 5.)

Ten of the last thirteen Account Statements WaMu sent to Johnson advised her: "YOUR ACCOUNT IS PAST DUE AND OVER ITS CREDIT LINE. Please pay the minimum payment listed above along with the over limit amount immediately. You may also call us at 1 800-280-9441 or visit us at www.wamucanhelp.com for payment options." (Doc. 25, ¶ 5; Doc. 26 Ex. D.) The Account Statements provided the name and address of WaMu, the minimum amount due, the previous and new balances, the credit line amount, the payment due date, and each month's transactions (including late payment and overlimit charges). (Doc. 26, Ex. D.) Further details regarding the Account Statements are set forth below.

WaMu charged off the entire balance of the Account on February 29, 2008. (Doc. 25, ¶ 6.) At the time of charge-off, Johnson owed $2,893.97 on the Account. (*Id.* ¶ 7.) On or about April 23, 2008, WaMu sold the Account to Sherman Originator, LLC, as part of a portfolio of accounts. (*Id.* ¶ 8.) Sherman Originator transferred the Account to LVNV. (*Id.* ¶ 9.) LVNV is a debt purchaser; it is not a credit originator. (*Id.* ¶ 10.)

3

On or about March 26, 2009, the Account was placed with SIMM Associates, Inc. ("SIMM"), a debt collector, to undertake collection. (*Id.* ¶ 11.) SIMM sent correspondence to Johnson informing her that her Account with WaMu had been purchased by LVNV and that SIMM was attempting to collect the amount due on behalf of LVNV. (*Id.* ¶¶ 12, 13.) On or about March 27, 2009, SIMM sent Johnson a letter at 546 Black Earth Court, Wales, WI 53183, indicating that LVNV had purchased the Account from WaMu, which it identified as the "ORIGINAL CREDITOR," and that there was a balance due as of that date of $3,196.62. (*Id.* ¶ 14.)

Johnson made two credit card payments of $125 each to SIMM regarding the Account—one payment on March 31, 2009 (a few days after SIMM had mailed Johnson one of its letters), and one payment on April 17, 2009. (Doc. 35, Additional Facts ("Add'l") ¶¶ 3–6.[2]) Johnson made the payments by using a credit card issued in the name of "Lindsay Reinbold" with an address of 546 Black Earth Court and a zip code of 53183. (*Id.* Add'l ¶ 7.) Johnson made no subsequent payments on the Account. (*Id.* Add'l ¶ 8.)

SIMM sent Johnson another letter on May 10, 2009, offering to settle her account. The letter indicated that LVNV was the "current creditor" and that WaMu was the "original creditor." (*Id.* Add'l ¶¶ 9, 10.) Pursuant to SIMM's records, this letter was never returned. (*Id.* Add'l ¶ 11.) The letter was mailed to Johnson's parents' house, where Johnson received mail. (*Id.* Add'l ¶¶ 12-14.)

SIMM was unable to collect on the Account and the Account was eventually recalled on or about September 24, 2009. (Doc. 25, ¶ 15.) Between May 5, 2012, and

---

[2]Johnson did not respond to LVNV's statement of additional facts (Doc. 35 at 14-17); thus, they are deemed uncontroverted.

4

October 26, 2012, JCC&A provided collection services to LVNV on the Account. (Doc. 35, Add'l ¶ 15.) During that time, JCC&A sent four separate "NOTICE OF LEGAL REVIEW AND SETTLEMENT OPTION" letters to Johnson at 900 Hawthorn Drive, Waukesha, Wisconsin, 53188-2956. (*Id*. Add'l ¶ 16.) The letters indicated a balance due and offered an opportunity to settle the Account for a lump sum. (*Id*. Add'l ¶¶ 17-26.) WaMu was identified as the "ORIGINAL CREDITOR(S)" and LVNV was identified as the "CURRENT CREDITOR(S)" on each of the letters. (*Id*. Add'l ¶ 21.) None of the letters were returned as undeliverable. (*Id*. Add'l ¶ 22.[3])

On or about May 3, 2013, LVNV filed a lawsuit against Johnson in Wisconsin state court, case 13SC2337, seeking payment on her debt balance (the "state-court action"). (Doc. 25, ¶ 17; *see* Doc. 30, ¶ 1.[4]) LVNV identified the debt account as involving a consumer credit transaction and alleged in the alternative that any required notice to cure had been issued or that the account was entirely past due and fully owed and no right to cure was necessary. (Doc. 1, Ex. A, ¶ 5.) Johnson was served with the state-court action summons and complaint in late spring 2013. (Doc. 30, ¶ 1.) She says she had no idea that a lawsuit was coming and had never been involved in a lawsuit before. (*Id*. ¶¶ 7, 8.) Johnson maintains she was shocked, stunned, upset, and confused because she did not recognize the company that was suing her. She asserts that she worried about being

---

[3]The court notes that in the complaint Johnson represented her address as 900 Hawthorne Dr., Waukesha, WI 53188. (Doc. 1 at 1.)

[4]Unless otherwise noted, a referenced proposed statement of material fact by Johnson was not controverted for the point referenced or the fact is taken in Johnson's favor.

jailed as a result of the lawsuit. (*Id.* ¶¶ 10–12.) Other claimed reactions, included crying and lost sleep over being sued. (*Id.* ¶¶ 13, 17.[5])

Johnson asserts that between her graduation from college in 2007 and the filing of LVNV's lawsuit, she never received collection letters, notice of assignment letters, notice of right to cure letters, demand letters, or other correspondence from LVNV. (Doc. 30, ¶ 9; Doc. 28-1, ¶¶ 5, 11.[6]) After graduation, Johnson had her mail sent to her parents' house and then to her current address. (Doc. 28-1, ¶ 11.) Johnson says that if she had received a notice or letter in the mail she would have contacted the sender to work the matter out. (Doc. 30, ¶ 28; Doc. 35, ¶ 28.)

LVNV did not send Johnson a notice of right to cure the default. (Doc. 25, ¶ 16; Doc. 30, ¶ 4.) Johnson asserts that prior to the state-court lawsuit, she did not receive a notice of right to cure a default regarding any obligations and had not heard of LVNV. (Doc. 30, ¶¶ 5, 6.[7])

On or about June 6, 2013, Johnson filed a motion to dismiss the state court action. (Doc. 25, ¶ 18.) She also alleged that notice of right to cure default and notice of assignment had not been served. (Doc. 30, ¶¶ 44, 45.) LVNV filed a voluntary dismissal of the collection lawsuit on or about June 25, 2013. The lawsuit was dismissed about four days later. (Doc. 25, ¶ 19; *see* Doc. 30, ¶ 47.) Shortly thereafter, Johnson received a

---

[5]Johnson submitted numerous proposed statements of fact regarding her reaction to the lawsuit, but additional detail regarding her stress and physical reaction is unnecessary for present purposes.

[6]LVNV disputes this statement of fact, pointing to the letters sent by third-pary collectors on behalf of LVNV and the fact that Johnson made two payments shortly after the letters from SIMM.

[7]LVNV disputes these statements. LVNV contends that the Account Statements provided the information required in a notice of right to cure. (*See* Doc. 35, ¶¶ 5, 49.) Further, LVNV says that a letter from SIMM told Johnson that LVNV had obtained the Account from WaMu. (*Id.* ¶ 5.)

6

signed order informing her of the voluntary dismissal of the lawsuit against her.  (Doc. 30, ¶ 41.)

DISCUSSION

A.    WCA Claims

The Wisconsin legislature's expressly stated purposes for the WCA include protecting customers against unfair, deceptive, and unconscionable merchant practices and encouraging the development of fair practices in consumer transactions.  Wis. Stat. § 421.102(2); *Kett v. Cmty. Credit Plan, Inc.*, 228 Wis. 2d 1, 18 & n.15, 596 N.W.2d 786 (1999).  The WCA may go further to protect consumer interests than legislation in any other state.  *Kett*, 228 Wis. 2d at 18 n.15; *Credit Acceptance Corp. v. Kong*, 2012 WI App 98, ¶ 8, 344 Wis. 2d 259, ¶ 8, 822 N.W.2d 506, ¶ 8.  At the heart of each of the purposes of the WCA is the protection of customers.  *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 26, 325 Wis. 2d 135, ¶ 26, 785 N.W.2d 302, ¶ 26.

The WCA should be liberally construed to promote these purposes.  § 421.102(1); *Kett*, 228 Wis. 2d at 18; *Credit Acceptance Corp.*, 2012 WI App 98, ¶ 8.  In addition, the WCA should be interpreted in coordination with the FDCPA, pursuant to which claims of unfair debt collection practices are viewed through the lens of the unsophisticated consumer, protecting the gullible as well as the shrewd.  *Brunton*, 2010 WI 50, ¶¶ 45-46 (citing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254 (7th Cir. 1994), and *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)).

Johnson asserts that LVNV's filing of the state-court complaint without previously providing a notice of right to cure or a notice of assignment violated the WCA, Wis. Stat.

7

§§ 425.104, 425.105 (the provisions regarding notices of right to cure), 427.104 generally, and § 427.104(1)(h) (prohibiting threatening or harassing conduct) specifically.

1.      Notice of Right to Cure—Wis. Stat. §§ 425.104 and 425.105

The undisputed facts show that Johnson never received a notice of right to cure from either WaMu or LVNV. Johnson contends that the Account could not be accelerated and LVNV could not sue her without having provided a notice of right to cure. LVNV contends that as the purchaser of an already defaulted account debt, it had no legal obligation to provide Johnson with notice of a right to cure. The court agrees with Johnson and will grant her motion for summary judgment on this point.

Under Wisconsin Law, a "merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105)." Wis. Stat. § 425.104(1) (2011-12). While § 425.104(1) sounds permissive, any cause of action regarding the obligation of a customer in a consumer credit transaction "shall be" subject to the provisions relating to the right to cure a default. Wis. Stat. § 425.103(3). And Wis. Stat. § 425.105(1) provides that a merchant

> may not accelerate the maturity of a consumer credit transaction [or] commence any action except as provided in s. 425.205(6) [(i.e., an action to recover collateral)] . . . unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

Until the expiration of those fifteen days,

> a customer may cure a default under a consumer credit transaction by tendering the amount of all unpaid installments due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges, and by tendering performance necessary to cure any default other than nonpayment of amounts due. The act of curing a default restores to

8

the customer the customer's rights under the agreement as though no default had occurred.

Wis. Stat. § 425.105(2). Thus, a cure of default also reinstates the credit agreement. Under these provisions, a customer whom a merchant believes is in default is entitled to receive a notice of the right to cure the default before either acceleration or suit, but only if that customer has a right to cure the default. *Rosendale State Bank v. Schultz*, 123 Wis. 2d 195, 198, 365 N.W.2d 911, 912 (Ct. App. 1985).

A right to cure exists regarding installment payments. *See id.* at 198. But a customer does *not* have a right to cure when the customer has defaulted on the entire obligation or the final installment. *Id.* at 198-99. The statutory language "indicates that the act of curing relates to a point of time in the customer-merchant relationship where the entire amount or final installment of the obligation is not yet due" and "contemplates a continuing relationship between the customer and merchant after the default is cured." *Id.* at 198.

In *Rosendale*, the borrowers failed to pay off two mortgage loans by the final expiration date. *Id.* at 196. The lender filed foreclosure proceedings on both mortgages without providing any notice of a right to cure the defaults. *Id.* The Wisconsin Court of Appeals held that the borrowers had no right to cure the default, and thus no right to notice, because the obligation was entirely past due and fully owed. *Id.* at 199. According to the court, the legislative purpose of notice of the right to cure was to provide an opportunity for the customer to restore the loan's status and maintain the customer-merchant relationship. *Id.* However, when the payment is fully owed and past due it is impossible to reinstate the loan or the customer-merchant relationship; curing the default would be to convey the entire amount due. *Id.*

9

When it filed a motion for judgment on the pleadings, LVNV contended that no notice to cure was required before suit against Johnson because her account was entirely past due and fully owed.  This court denied the motion, stating that whether Johnson's alleged debt was an amount fully past due or involved installment payments that were past due could not be discerned from the pleadings.  It was plausible that the referenced account was an installment account involving past due installments, triggering a right to cure.

The facts presented on summary judgment show that Johnson's debt, indeed, involved installment payments.  Johnson admits that she had credit cards and does not dispute the WaMu credit card statements, which show a debt in her name from a revolving credit card, with minimum payments and a maximum credit line amount.  (Doc. 26, Ex. D.)  As LVNV submitted those WaMu statements, both parties' facts are in agreement on this point.  Thus, Johnson had an installment-payment account regarding which she could make payments to restore her merchant-customer relationship.  She was entitled to a right to cure before the debt was accelerated and a collection lawsuit was brought.

LVNV contends that under *Rosendale* no notice was required because at the time LVNV sued Johnson the customer-merchant relationship could not be preserved or reinstated.  LVNV was not the original creditor, and at the time LVNV obtained the Account, the debt had been charged off by WaMu.  LVNV contends that it could not and cannot provide a notice of right to cure because it does not provide revolving consumer credit but instead buys and collects debt.  Thus, payment of the default would not renew the revolving-credit relationship between Johnson and the original creditor.

10

Consequently, LVNV submits that Johnson's debt is fully due and payable and that under *Rosendale* she is not entitled to notice of a right to cure.

But, as this court stated when denying the motion for judgment on the pleadings, LVNV, as assignee, stepped into the shoes of the original creditor, WaMu. *See, e.g.*, Wis. Stat. § 422.407(1). If WaMu (with whom the relationship could be reinstated) accelerated without giving notice of a right to cure, LVNV cannot step into a *better* position as assignee. That WaMu chose to write off the debt does not mean that it could improperly accelerate it. That WaMu sold the written-off debt to LVNV did not convert Johnson's installment account triggering a right to cure to a final-payment-type or fully-owed account as in *Rosendale*. What WaMu and LVNV did regarding accounting and ownership of Johnson's Account after a default cannot change the nature of Johnson's credit relationship with WaMu and eliminate her rights under the WCA. Consumers should not lose their consumer rights based on a creditor's choice to sell or assign the debt. If neither LVNV or WaMu provided Johnson with a notice of right to cure, then LVNV could not sue Johnson without such notice.

The question then becomes whether Johnson received any notice of right to cure. It is undisputed for purposes of the present motion that Johnson never received any document expressly titled "notice of default and right to cure" or "notice of acceleration of debt" or something similar. And Johnson swears that she never received a notice of right to cure. LVNV admits that it did not send Johnson a notice of right to cure and does not submit any such document from its files or files it received from its predecessors. Nevertheless, LVNV contends that the WaMu Account Statements constituted notices of the right to cure the default.

11

Wisconsin Statute § 425.104(2) sets forth the requirements of any notice of alleged default and right to cure:

> Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

The court disagrees with LVNV's argument. Although § 425.104(2) does not mandate the use of any magic language, type size, or title of a "notice of right to cure," treating a monthly billing statement as both that and a notice of right to cure goes against the purposes of the WCA. Allowing the required information for a notice of right to cure to be buried in information that is already given on a monthly basis in a billing statement can be considered unfair and deceptive. An unsophisticated consumer would reasonably not know or understand the difference. Implicit in the concept of a notice of a right to cure is that the document, even if no specific words or title is required, provide notice. A document identical to or that would reasonably be mistaken for simply a monthly billing statement does not satisfy the requirement.

Moreover, even if monthly statements could constitute a notice of right to cure, *these* monthly statements do not satisfy the requirements. The Account Statements contained the name, address, and telephone number of WaMu; the account number, credit line amount, and a listing of each month's credit transactions and finance charges (arguably constituting a brief identification of the consumer credit transaction); a statement that the account was past due and over the credit limit (arguably constituting

12

a statement of the nature of the alleged default[8]); and a minimum payment due date (arguably constituting the date by which an amount must be paid). However, the Account Statements lack "a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default."

The Account Statements fail to include a dollar sum required to cure the default and restore Johnson's Account. The only expressly stated amount on each of the Account Statements is the minimum payment. But the Account Statements told Johnson to pay that minimum payment plus "the overlimit amount." Thus, a consumer would have to calculate or estimate what to pay rather than be informed by a "clear statement of the total payment" required. The WCA is aimed to protect the unsophisticated consumer, who may not understand how the overlimit amount would be calculated or even what "overlimit" means. A reasonably intelligent consumer may determine the overlimit amount by subtracting the listed credit line of $2250.00 from the new balance. But even a reasonably intelligent consumer could be confused about how the minimum payment and overlimit amounts work together regarding a total payment amount. For instance, the first Account Statement in Exhibit D to Document 26 (with a closing date of 2/23/07) shows a balance of $2607.51 and a minimum payment of $267.00. (Doc. 26, Ex. D at 1.) Paying the minimum payment would not bring the Account under the credit limit of $2250.00; instead, the balance would be $2340.51. The overlimit amount could be calculated as $357.51 (the difference between the balance on the statement and the credit line) or it could be $90.51 (the difference between the balance after the minimum

---

[8] However, a default occurs when the consumer fails to pay when due on two occasions within any twelve-month period. Wis. Stat. § 425.103(2)(b). Thus, "past due" may not equate with default, though the court need not decide that issue at this time.

13

payment and the credit line). Does the consumer pay $357.51 ($267.00 plus $90.51) to reduce the balance to the credit line amount? Or does the consumer pay $624.51 ($357.51 *plus* $267.00) to cure the default? And even when the Account Statements set forth a minimum payment that would bring the balance under the credit line, a reasonable consumer could be confused regarding whether some additional amount was necessary, as he or she was directed to pay the minimum payment "*along with*" the overlimit amount. For instance, the statement with closing date 11/23/07 showed a balance of $2787.82 and a minimum payment of $582.00. (Doc. 26, Ex. D at 18.) Paying the minimum amount would bring the balance down to $2205.82. But would some overlimit amount still have to be paid in addition to the minimum payment? If so, how much? And what if the next month's finance charge would bump Johnson over the credit limit again? Would any default actually be cured?

To be valid, a notice of right to cure must fully comply with § 425.104. *Indianhead Motors v. Brooks*, 2006 WI App 266, ¶ 14, 297 Wis. 2d 821, ¶ 14, 726 N.W.2d 352, ¶ 14. The *Indianhead* court rejected an argument that "technical" failures could be excused. *Id*. ¶ 13 ("If the defect here is 'technical,' as Indianhead argues, virtually all defects in a notice could be considered 'technical,' and the specific listed requirements in § 425.104 would be rendered optional."). Here, the lack of clarity regarding the amount to be paid means that the requirements of a notice of right to cure were not met by the Account Statements.[9] The court will grant summary judgment to Johnson on this point.

_____

[9]Notably, the Account Statements may also fail as notices or right to cure because they fail to itemize delinquency charges. The amounts due in the Account Statements appear to combine past charges from purchases, finance charges, and late fees into one amount. In *Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 932 (W.D. Wis. 2013), Judge Crabb found that a defendant violated § 425.104 by combining past due amounts from multiple months. However, the *Nelson* decision was later vacated and cannot be relied upon. *Nelson v. Santander Consumer USA, Inc.*, No. 11-cv-307-

As a final argument regarding Johnson's notice-of-right-to-cure claim, LVNV contends that no affirmative cause of action exists to enforce a violation of §§ 425.104 and 425.105. Support for this argument comes from an opinion of Judge Barbara B. Crabb, *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962 (W.D. Wis. 2013). Beal argued that the defendant violated Wis. Stat. § 427.104(1)(j) (prohibiting debt collectors from attempting to enforce a right with knowledge or reason to know the right does not exist) by failing to provide a notice of right to cure under §§ 425.104 and 425.105, at least fifteen days before filing foreclosure proceedings regarding a timeshare financing. Judge Crabb held that the plaintiff could not sustain a claim under the WCA on that theory:

> [T]he requirement that a creditor provide a notice of right to cure default is a procedural hurdle creditors must clear in order to pursue their remedies. Wis. Stat. § 425.105 (concerning "creditor remedies" and describing condition precedent for filing suit). . . . Plaintiff cites no authority to support her position that the purpose of these provisions is to create a separate cause of action for debtors and has cited no cases in which a debtor was permitted to bring a private right of action under the Wisconsin Consumer Act for a creditor's failure to comply with these requirements. Instead, the appropriate remedy for a creditor's failure to comply with these procedural requirements is dismissal of the creditor's action, which is what happened to defendant's action against plaintiff in the Circuit Court for Sauk County. In other words, plaintiff has already received the relief to which she is entitled under these provisions.

956 F. Supp. 2d at 969-70. *Beal* is on point and suggests that § 425.105(1) provides the shield of a defense to the collection lawsuit, not the sword in the form of a consumer lawsuit seeking damages.

But *Beal* is merely persuasive authority, and Johnson should not lose this claim due to Beal's failure to provide Judge Crabb with any authority. Here, Johnson points to

---

bbc, 2013 WL 5377280 (W.D. Wis. June 7, 2013). Nevertheless, there is a similar problem in this case.

Wis. Stat. §§ 425.301 and 425.302. Section 425.301 states that "[a]ny right or obligation declared by chs. 421 to 427 is enforceable by action unless the provision declaring it specifies a different and limited effect" and that the remedies provided in the sections immediately following should be liberally construed "to the end that the customer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied" with those chapters. The next section, § 425.302, "applies to all violations [of the WCA] for which no other remedy is specifically provided" and states that a person committing a violation is liable to the customer for $25.00 and actual damages sustained by the customer by reason of the violation. Sections 425.104 and 425.105 do not expressly state that they have a limited effect only as a defense to an action rather than an affirmative claim allowed by § 425.301.

Further, Wis. Stat. § 425.307 provides statutes of limitations for actions to enforce rights under chapters 421 to 427 while stating that rights under those chapters may be asserted as defenses to an action against the customer without regard to the statute of limitations, suggesting that even if § 425.105 is viewed as a defensive shield, nothing prevents it from being a "cause-of-action sword." It appears that Judge Crabb was not asked to consider these statutes.

Moreover, consumers have brought actions in state courts against merchants or debt collectors relating to notices of right to cure without judicial commentary on any impropriety. For instance, in *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, 346 Wis. 2d 635, 829 N.W.2d 522, Kirk sued the debt collector on his defaulted retail installment contract on two theories, one of which was that the debt collector failed to notify him of his right to cure the default in violation of § 425.105. *Id.* ¶ 11. Kirk lost that claim

16

because the trial court found that a notice of right to cure had been properly sent to Kirk. *See id.* ¶ 26. But the Wisconsin Court of Appeals did not question whether Kirk could bring his claim at all. *See id.*

The consumer in *Homa v. East Towne Ford, Inc.*, 125 Wis. 2d 73, 370 N.W.2d 592 (Ct. App. 1985), alleged that the defendants (a car dealer and the credit company that financed the consumer's automobile purchase) violated WCA provisions regarding surrender of collateral because, among other reasons, she was not informed of the fifteen-day period or notice of the right to cure as required by § 425.105.[10] The Supreme Court of Wisconsin found that the consumer had stated a claim, 125 Wis. 2d at 81, though she lost on summary judgment, *id.* at 83-84.

In *Credit Acceptance Corp.*, consumers counterclaimed for violations of the WCA in a deficiency action against them following repossession of their automobile. The court found that the notice of right to cure sent to the consumers was premature as they were not in default, as defined by the WCA, when the notice was sent. Therefore, Credit Acceptance could not repossess the vehicle. Because Credit Acceptance did, it was subject to penalties under Wis. Stat. § 425.305 and the consumers were entitled to recover on their counterclaim any sums paid to the merchant. 2012 WI App 98, ¶¶ 13-16.

Based on these statutes, cases and the purposes of the WCA, liberally construed, this court rejects the view that §§ 425.104 and 425.105 result only in a defense to suit. These statutes create a procedural hurdle that must be overcome before any suit is filed.

---

[10]In addition to prohibiting acceleration and commencement of a lawsuit, § 425.105(1) prohibits repossession of collateral (except by voluntary surrender) until fifteen days after notice of a right to cure if such a notice is required.

17

But if the creditor files suit, in disregard of the notice requirement, a WCA violation has occurred and the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with the requirement.

Therefore, summary judgment as to liability will be granted to Johnson on her claim based on §§ 425.104 and 425.105.

2.      Threat and Harassment—Wis. Stat. § 427.104(h)

Wisconsin Statute § 427.104(h) states that a debt collector may not, in attempting to collect an alleged debt arising from a consumer credit transaction, "[e]ngage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to a customer." The court applies an objective standard to determine if the action of the debt collector can be expected to threaten or harass. *See Assocs. Fin. Serv. of Wis., Inc. v. Hornik,* 114 Wis. 2d 163, 168, 336 N.W.2d 395, 398 (Ct. App. 1983). Generally, the decision will be a question for the jury. *Id.*; *accord Weber v. Great Lakes Educ. Loan Servs., Inc.*, No. 13-cv-00291-wmc, 2013 WL 3943507, *5 (W.D. Wis. July 30, 2013).

The statute does not define "threaten" or "harass," and little case law appears in the statute's annotations. One dictionary defines harass as "to subject (someone) to continuous vexatious attacks, questions, demands or other unpleasantness." New Lexicon Webster's Dictionary of the English Language 439 (1989). "Threat" is defined as "a statement or other indication of intention to hurt, punish, destroy etc." *Id.* at 1029.

At least one court has found that initiating a lawsuit without adequate documentary support fails to create liability under 15 U.S.C. § 1692d, which prohibits conduct "the natural consequence of which is to harass, oppress, or abuse" the recipient, *Harvey v.*

18

*Great Seneca Fin. Corp.*, 453 F.3d 324, 330-31 (6th Cir. 2006).  According to the *Harvey* court, § 1692d prohibits tactics intended to embarrass, upset, or frighten the debtor, and such tactics "are not comparable to the single filing of a debt-collection lawsuit," even if viewed from the perspective of an unsophisticated consumer.  *Id.* at 330.

Johnson provides evidence that she was shocked, stunned, upset, and confused by being sued; she worried that she might end up in jail as a result of the lawsuit; and she cried and lost sleep over being sued.  But her personal reaction to the lawsuit does not automatically mean that LVNV's conduct is reasonably considered threatening or harassing to an unsophisticated consumer such that Johnson wins as a matter of law.  Nevertheless, her reaction supports a finding that an unsophisticated consumer could feel threatened or harassed by such a lawsuit.

Here, the question is whether an unsophisticated consumer would consider the start of litigation, without the prior required notice of a right to cure and without a notice of assignment, to be threatening or harassing conduct.  Taking the facts in Johnson's favor, she received no notice that LVNV had purchased the debt from WaMu, and neither WaMu nor LVNV provided her with a right to cure the default prior to LVNV's filing of the state-court case.  An unsophisticated consumer reasonably could find the filing of suit by an unknown entity before a statutorily required step for bringing the lawsuit (i.e., the notice of right to cure) has been taken to be threatening or harassing behavior.[11]  This case differs from *Harvey* in that the problem with the underlying collection lawsuit was not

---

[11]LVNV acknowledged that if a notice of right to cure was required before LVNV commenced the state-court action, a reasonable person might feel threatened or harassed by the lawsuit consistent with § 427.104(h). (Doc. 24 at 10.) LVNV's motion for summary judgment and its response to Johnson's motion relied heavily on the argument that a notice of right to cure was not required.  As stated above, this court has rejected that argument.

merely missing documentary support but instead a statutory bar to the lawsuit's inception. Allowing Johnson's claim to go forward comports with the purposes of the WCA.

Taking the facts in LVNV's favor for purposes of Johnson's motion for partial summary judgment, Johnson received plenty of notice that she had an unpaid and overdue WaMu credit card account and that LVNV had acquired the debt from WaMu. The notices to her from SIMM and other third parties were not returned and were addresses she acknowledged were hers. She made at least one payment in response to one of the letters. She admits she had several credit cards while in college and that she had fallen behind in paying some of them. A reasonable jury could find in LVNV's favor that even without having received a notice of right to cure or formal notice of assignment, any unsophisticated consumer in Johnson's position could not reasonably have felt that LVNV's lawsuit attempting to collect on the debt was a vexatious attack or based on any intent to hurt or punish her.

The court believes that a reasonable jury could find in favor of either side regarding this claim. Thus, summary judgment will be denied both parties.

B.    Fair Debt Collection Practices Act

1.    Unfair or Unconscionable Conduct—15 U.S.C. § 1692f

The purposes of the Fair Debt Collection Practices Act are to eliminate abusive debt collection practices by debt collectors, insure that debt collectors who do not use abusive practices are not disadvantaged, and promote consistent state action to protect consumers against abusive collection activity. 15 U.S.C. § 1692(e). Under the FDCPA a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Although the section lists specific practices that are

20

unfair per se, the list is not exclusive. *Todd. v. Collecto, Inc.*, 731 F.3d 734, 736 (7th Cir. 2013). Whether a debt collector's actions constitute unfair or unconscionable behavior is generally to be decided objectively by a jury *Id.* at 739. However, if no reasonable jury could conclude that the given actions rose to the level provided by law, a court may dismiss. *Id.* The court must look at the actions of the debt collector from the point of view of an "unsophisticated consumer," meaning from the perspective of a person with modest education and limited commercial experience. *See McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). The violation of state law is not a per se violation of the FDCPA. *Wade v. Reg'l Cred. Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

Similar to the discussion above, the question here is whether an unsophisticated consumer would consider the start of litigation, without prior notice of a right to cure or of assignment, to be unfair or unconscionable behavior. Again, taking the facts in Johnson's favor, she received no notice that LVNV had purchased the debt from WaMu, and neither WaMu nor LVNV provided her with a right to cure the default prior to LVNV's filing of the state-court case. An unsophisticated consumer reasonably could find the filing of suit by an unknown entity before all the steps for bringing the lawsuit have been taken to be unfair or unconscionable behavior.[12]

At least one district court has held that if a debt collector has not provided notice of assignment through any form of contact prior to bringing suit, the debt collector may be liable under the FDCPA § 1692f, though that decision was based on the validity of assignments under New York law, which requires notice before a debtor is bound to pay

---

[12]Again, LVNV's argument in support of summary judgment on this claim relies heavily on its position that a notice of right to cure default was not required. (*See* Doc. 24 at 12-13 ("[F]ailing to send notices that are not actually required under the WCA do[es] not support a valid claim for a violation of the FDCPA.").)

an assignee. *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 639-40 (S.D.N.Y. 2013). As discussed in a prior decision of this court, pertinent Wisconsin statutes do not include this requirement regarding assignments. Nevertheless, this court believes that a reasonable jury could find for Johnson on this point when the facts are taken in her favor.[13]

Taking the facts in LVNV's favor for purposes of Johnson's motion for partial summary judgment, Johnson received plenty of notice that she had an unpaid and overdue WaMu credit card account and that LVNV had acquired the debt from WaMu. Several notices regarding the debt were mailed to addresses Johnson admits were hers and were not returned. She made at least one payment in response to one of the letters. Johnson acknowledges she had several credit cards while in college and that she had fallen behind in paying some of them. Here, a reasonable jury could find in LVNV's favor that even without having received a notice of right to cure, Johnson or any unsophisticated consumer could not reasonably have been surprised or shocked by LVNV's lawsuit attempting to collect on the debt.

Therefore, summary judgment will be denied to both parties on this claim.

2. Bona Fide Error Defense

As an affirmative defense to Johnson's FDCPA claim LVNV pled bona fide error. (Doc. 5 at 4.) At the end of her summary judgment motion, Johnson argues for dismissal of LVNV's bona-fide-error defense not under Rule 56 but under Fed. R. Civ. P. 8, 9, and

---

[13]While some federal courts may have found that initiating a lawsuit without adequate documentary support fails to create liability under 15 U.S.C. § 1692d, which prohibits conduct that harasses, oppresses, or abuses the recipient, *Harvey*, 453 F.3d at 330-31, or 15 U.S.C. § 1692e, which prohibits deceptive practices, *id.* at 331-33; *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156 (D. Minn. 2013), this court is not persuaded that the same thinking applies to § 1692f's prohibition of unfair or unconscionable conduct.

22

12(b)(6) and (f). Rule 8 requires that any pleading include a short and plain statement showing that the pleader is entitled to relief. Rule 9 requires heightened pleading for allegations of fraud or mistake. Rule 12(f) states that the court may strike an "insufficient defense." And Rule 12(b)(6) allows dismissal for failure to state a claim. Affirmative defenses are pleadings and therefore subject to all pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

A debt collector may not be held liable for violations of the FDCPA if it establishes that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Thus, LVNV must show that the violation "(1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error." *Ruth v. Triumph P'ships*, 577 F.3d 790, 803 (7th Cir. 2009); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1090 (N.D. Ill. 2014).

Johnson does not attack LVNV's evidence regarding the defense but rather only whether the defense passes a pleadings test. But a challenge to the pleadings should have occurred long ago. Rule 12(f) provides that a motion to strike should be filed within twenty-one days after service of the pleading, and LVNV filed its answer on December 9, 2013, well over a year before Johnson filed her summary judgment motion. Motions to strike are generally disfavored because they often cause delay. *Heller Fin.*, 883 F.3d at 1294. Because they are pleadings leave to amend is freely granted as justice requires. *Id.* Striking the affirmative defense at this late date would likely be accompanied by leave

23

to amend, causing delay in the case. Moreover, Rule 8's requirement of a short and plain statement is to provide fair notice of the claim or defense. Because the posture of this case is at the post-discovery stage, Johnson should have a good sense of the facts on which LVNV may rely to support this defense such that she is able to address this defense at trial. Hence, Johnson's motion will be denied on this point. The parties may litigate the bona fide error defense at trial.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that Johnson's motion for summary judgment ( Doc. 28) is granted as to liability regarding the entitlement to a notice of right to cure, failure of the Account Statements to qualify as such notices, and available cause of action regarding the violation of §§ 425.104 and 425.105 but denied in all other respects denied.

IT IS FURTHER ORDERED that LVNV's motion for summary judgment (Doc. 23) is denied.

IT IS FURTHER ORDERED that the parties appear by telephone for a scheduling conference set for March 15, 2016, at 11:30 a.m., at which time the court will set final pretrial conference and trial dates and discuss the possibility of mediation. The court will place the telephone call. On or before March 14, 2016, the parties shall notify the court regarding which attorneys will appear for the conference.

Dated at Milwaukee, Wisconsin, this 18th day of February, 2016.

BY THE COURT
/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

24